IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION


JOSHUA MCGOWAN                                              PLAINTIFF


VS.                            No. 3:25-cv-00082 PSH


FRANK BISIGNANO, Commissioner,
   Social Security Administration                    DEFENDANT


ORDER

Plaintiff Joshua McGowan ("McGowan") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to deny his claim for Supplemental Security Income ("SSI"). McGowan contends the Administrative Law Judge ("ALJ") erred in assessing the mental evaluation of Samuel B. Hester, Ph.D. ("Hester"), the psychiatric evaluation of APRN Bethany Collins ("Collins"), school reports, and the testimony of McGowan and his mother. The net effect of these errors, according to McGowan, is the ALJ failed to properly assess McGowan's residual functional capacity ("RFC"). Bisignano states substantial evidence supports the ALJ's decision that McGowan was not disabled during the relevant period. Bisignano is correct, and the ALJ's decision is affirmed

1

and the case dismissed.

The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on May 22, 2024. (Tr. 33-68). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Bisignano's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from April 17, 2023, when the application was filed, through June 18, 2024, the date of the ALJ's decision.

*The Administrative Hearing:*

McGowan testified that he was 21 years old, and a high school graduate who received accommodations in his math classes. He was in special education classes and received accommodations through the ninth grade, and graduated with "good" grades.[1] Doc. No. 6-2, page 39. He briefly (one week) tried college but found it "overwhelming, trying to get everywhere and trying to keep up with everything." *Id.* He had no relevant work experience. McGowan had a driver's license but did not drive for fear of an accident. He resided with his mother, who typically drove

---

[1] Standardized testing results from 2020, when McGowan was in high school, showed him to be "Above average" in his reading composite scores, "Below average" in math composite scores, and "Well Above average" in written language composite scores. Doc. No. 6-6, page 24. A teacher questionnaire from this same time frame from a teacher who dealt daily with McGowan for two years reflected her favorable opinions – he was "a strong academic student," "very respectful," with no problems attending and

for him, and his sister and their dog.  He visited his grandparents about every other day and spent nights with them on occasion.  Although he had no assigned chores he helped with laundry and kept his room in order.

McGowan enjoyed writing, watching television, watching planes fly, and spending time with his family.  He talked with friends from high school "pretty often online" and would sometimes play video games with the friends.  Doc. No. 6-2, page 43.  He went out with friends and family for meals or movies.

At school he was distracted at times (e.g., by a loud noise) but was "usually able to concentrate on my work" and finish in a timely manner.  Doc. No. 6-2, page 44.  He tended to basic hygiene needs without reminders.

On further questioning by the ALJ, McGowan stated he did not join clubs in school except for band participation in the eighth grade.  He noted his interest in animals and stage craft, and he took an agricultural class in ninth grade and stage craft in tenth grade.  With regard to video games, McGowan stated he usually played by himself, and there were "too many" games to choose a favorite.  Doc. No. 6-2, page 47.

---

completing tasks.  Doc. No. 6-7, pages 61-62.

Upon further questioning by his attorney, McGowan stated he did not attend sporting events, homecoming, or prom in high school, and was not part of a church youth group.

McGowan's mother, Andrea, testified that he had never lived by himself, and confirmed his lack of extracurricular high school activities. The primary accommodation for her son in school was extra time to complete tests, which was provided throughout his schooling. Her son could not live on his own because "he's scared of everything." Doc. No. 6-2, page 51. He tended to hygienic needs (possibly too diligently, as she said he was germaphobic and washed his hands constantly), tended to his own clothes (washing, drying, and folding), and helped care for the dog. As for daily activities, she stated he spent a great deal of time with a toy collection, cleaning and arranging the items, and writing. She noted three or four friends that he engaged with online and met with them on Thursday nights. She did not believe he could live on his own, saying he was "very smart" but had "no common sense" and would struggle with problem solving. Doc. No. 6-2, page 56. When asked if McGowan might be a bagger at a grocery story she said, "I think he would do okay at that, however it would be the driving somebody crazy . . . And I mean just little tasks as far as opening a brown bag there would be 15 questions that come with it." Doc. No. 6-2, page 58. She estimated that he

4

would interact "fairly well" with others.  *Id.*   Her son spends three to four days a week with his grandparents and shares a special relationship with his grandfather.

When her son gets anxious "he just freaks out" and doesn't deal well with emotions.  Doc. No. 6-2, page 61.  "[M]y main goal out of this is to get him in some counseling."  *Id.*  She described his frustration when interested in a girl and being told to stay away from her by another boy.  The frustration has remained with him for two years, and he doesn't understand how to deal with the frustration and doesn't appreciate the consequences of his behavior.

When the ALJ asked why McGowan was not currently in counseling, his mother inidcated that his condition was not "that bad until like the last year or two."  Doc. No. 6-2, page 63.  When probed about McGowan's ability to live on his own, she conceded he would know to call a plumber if the plumbing broke down, that he could make chicken nuggets in the oven and could ask for help if the supply ran low, that he could ask for more detergent if needed for the dishwasher, and that he would know to call her or grandparents for help.

Dianne Smith ("Smith"), a vocational expert, testified.  The ALJ asked Smith to consider a hypothetical worker of McGowan's age, education, and experience, who could work at all exertional levels with the following restrictions: can understand and remember simple instructions; can sustain attention and

concentration to complete simple tasks with the customary workplace breaks; can use judgment to make a simple, work-related decision; can interact as needed with supervisors but only occasional interaction with coworkers and the general public; and can tolerate only occasional changes in a routine work setting. Smith testified that such a hypothetical worker could perform the jobs of icers (heavy exertional level), hand laundry workers (medium exertional level), and sub-assemblers (light exertional level). Smith testified no jobs were available if the hypothetical worker could not respond to even occasional contact with the general public, coworkers, or supervisors and the worker was unable to tolerate even occasional changes in a routine work setting or use judgment to make even simple work-related decisions. Doc. No. 6-2, pages 66-68.

*The ALJ's Decision*

Following the administrative hearing, the ALJ, in his June 18, 2024, decision, determined McGowan had the severe impairments of autistic spectrum disorder and anxiety disorder and a non-severe impairment of obesity. The ALJ found McGowan did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically addressed whether McGowan met Listings 12.06 and 12.10. As part of this analysis, the ALJ considered the

"paragraph B" criteria, rating McGowan in four broad areas of functioning, finding McGowan had:  (1) a mild limitation in understanding, remembering or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a moderate limitation in adapting or managing oneself.  Since McGowan was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied.

The ALJ also found the "paragraph C" criteria of Listing 12.06 were not met.  Part of this criteria requires evidence of medical treatment, mental-health therapy, psychosocial supports, or a highly structured setting that is ongoing.  The ALJ, citing McGowan's testimony that he resided at home with his mother and sister, found no evidence of a highly structured setting.

The ALJ determined McGowan had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: he could understand and remember simple instructions; he could sustain attention and concentration to complete simple tasks within customary workplace breaks; he could use judgment to make simple work related decisions; he could interact as needed, but could have only occasional interactions with coworkers and the general public; and he could tolerate occasional changes in a routine work setting.

This RFC mirrored the worker described in the first hypothetical question posed to Smith.

The ALJ opined that McGowan's impairment could reasonably be expected to cause his alleged symptoms. However, the ALJ found McGowan's statements about the intensity, persistence and limiting effects of the symptoms were "not entirely consistent with the medical evidence and the other evidence in the record." Doc. No. 6-2, page 25.

The ALJ considered the relevant medical evidence. McGowan was seen by APRN Collins as a new patient at Renew Mental Health & Wellness on May 11, 2023, complaining that he was headed in the wrong direction, desiring to reestablish his autism evaluation, and needing evaluation to be on disability. Collins noted McGowan, who was diagnosed with autism at age two, was experiencing irritability, mood swings, anxiety social impairments, and feeling overwhelmed, among other issues. Collins recorded that McGowan was well-groomed, alert and oriented, cooperative, with normal mood and affect, normal thought content and processes, normal speech and eye contact, attentive, and with an intact memory. Collins also noted McGowan had no history of psychiatric medications, and no past treatment for autism or Asperger's syndrome. Collins diagnosed McGowan with autistic disorder, generalized anxiety disorder,

8

developmental disorder of speech and language, unspecified, and conversion disorder with sensory symptom or deficit.   See Doc. No. 6-2, page 25, summarizing Collins' report, found at Doc. No. 6-7, pages 2-9.

The ALJ considered the September 12, 2023, consultative psychological evaluation conducted by Hester. Like Collins, Hester found McGowan was dressed and groomed appropriately, with good hygiene and good attitude, cooperative, with normal speech and effective communication, and with normal thought processes and thought content. And like Collins, Hester diagnosed McGowan with autism.[2] Hester's evaluation identified the following limitations:   limited capacity to communicate and interact in a socially adequate manner; ability to communicate in an intelligible but not always effective manner; inability to cope with the mental demands of basic work tasks; and possibly being unable to complete work tasks in an acceptable time frame due to obsessive compulsive disorder.  Hester also noted McGowan was able to attend to and sustain concentration on basic tasks, and able to sustain persistence in completing tasks. See Doc. No. 6-2, pages 25-26, summarizing Hester's report, found at Doc. No. 6-7, pages 68-74.

The ALJ found Hester's opinion "not persuasive" and "not entirely

---

[2] Hester's precise diagnosis was autistic spectrum disorder, by history, obsessive compulsive disorder, by history, and avoidant personality traits.

supported" because it appeared to rely on the statements of McGowan and his mother and disregarded a grossly normal mental exam of Hester.  Doc. No. 6-2, page 27.  The ALJ also deemed Hester's opinion as "not entirely consistent with the record as a whole."  *Id.*  For example, the ALJ cited McGowan's testimony of regular social interaction with friends and family members.  The ALJ summarized that the record as a whole – the medical evidence, opinion evidence, and the testimony of McGowan and his mother – supported the RFC determination. Relying upon Smith's expert testimony, the ALJ concluded that there were jobs which McGowan could perform, and he was not disabled.  Doc. No. 6-2, pages 18-29.

*Analysis*

McGowan contends the ALJ erred when considering the reports of Hester and Collins and erred in considering his school reports and the testimony of McGowan and his mother.   As a result, McGowan argues the ALJ's RFC overstated his abilities.

Initially, the Court notes that the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC.  Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical

records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). As part of this process, the ALJ is required by the revised regulations to assess the persuasiveness of medical opinions, considering and discussing, at a minimum, the supportability and consistency of the opinions. 20 C.F.R. § 416.920c. Here, the ALJ found Hester's opinion was not persuasive and was "not entirely supported" and "not entirely consistent" with the record as a whole. Doc. No. 6-2, page 27. The ALJ complied with the relevant regulations, and there is no error in his treatment of Hester's opinion.

With regard to Collins, the ALJ did not discount her report, which roughly aligned with his RFC determination. The ALJ noted Collins and Hester both diagnosed McGowan with autism. A diagnosis alone, however, does not answer the question of a claimant's functional capacity. The ALJ's duty is to weigh all the relevant evidence and arrive at the RFC. The statements of Hester and Collins are part of this equation, and the ALJ properly analyzed these documents.

The undersigned also finds no error in the ALJ's consideration of McGowan's school records, his testimony, and his mother's testimony. Much of this evidence strongly supports the ALJ's nonexertional limitations. To the extent that there are minor items which may run counter to the ALJ's decision, this does

not compel reversal of the ALJ's ruling:

> In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.,* 879 F.2d 441, 444 (8th Cir.1989) (citing *Steadman v. S.E.C.,* 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin,* 349 F.3d at 555 (citing *Bates v. Chater,* 54 F.3d 529, 532 (8th Cir.1995)), or "review the factual record *de novo.*" *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala,* 22 F.3d 186, 188 (8th Cir.1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992), and citing *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989)); *accord Baldwin,* 349 F.3d at 555; *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994) (citing *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff,* 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page,* 484 F.3d at 1042–43 (citing *Kelley v. Barnhart,* 372 F.3d 958, 961 (8th Cir.2004); *Travis v. Astrue,* 477 F.3d 1037, 1040 (8th Cir.2007); *Cox v. Barnhart,* 471 F.3d 902, 906 (8th Cir.2006)).

*Rittenhouse v. Astrue*, 767 F. Supp. 2d 985, 1000–01 (N.D. Iowa 2011).

*Conclusion*

The essential question is whether the ALJ erred in assessing McGowan's

mental abilities.  The ALJ included non-exertional limitations to account for his mental impairments.  These limitations included variables limiting workplace instructions, interpersonal contact, the complexity of the tasks to be performed, and the ability to adjust to changes on the job.  The Court finds substantial evidence, including the testimony of McGowan and his mother, the school records, and the medical records, to support the ALJ's assessment of his mental impairments, as well as his allowances for those impairments in his RFC ruling.  There is no error in this regard.

In summary, substantial evidence supports the determinations reached by the ALJ.  The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Bisignano is affirmed and McGowan's complaint is dismissed with prejudice.

IT IS SO ORDERED this 4th day of February, 2026.

_____
UNITED STATES MAGISTRATE JUDGE